In the Matter of the Claim of JOSEPH ZYGMONT, Appellant, against CERTAIN-TEED PRODUCTS CORPORATION et al., Respondents.

Third Department, March 7, 1945.

*Dudley, Gray, Phelps & Gray* (*Salem G. Mansour* of counsel), for claimant-appellant.

*Tippett, Cotter & Carey* (*Clarence B. Tippett* of counsel), for employer and insurance carrier, respondents.

BREWSTER, J. The uncontradicted evidence in this case shows: On April 29, 1942, the claimant entered the employment of employer-respondent and started work in its warehouse at Niagara Falls, N. Y., at 4:00 P.M.; his tour of duty calling for his continuance until midnight. His particular job was assisting another employee in handling and cording newly made rolls of tar paper in a warehouse which was fitted with a concrete floor. After working for four or four and a half hours and while at work, standing on the concrete floor, he suddenly fell prone, striking his head on the floor, fracturing his skull and causing him to sustain other severe and disabling injuries. The Industrial Board has found that claimant's said injuries were sustained *in the course* of his employment but it has denied him an award therefor and disallowed his claim upon the ground that his employment "did not place him in a position where he fell from a height or where in falling, he struck any obstacle " and that accordingly "he did not sustain an accidental injury arising *out of* his employment." There was other evidence, also uncontradicted, which, if believed, would have supported a finding that the conditions attached to the place of claimant's work in combination with other conditions produced his accidental injuries. Briefly adverted to, this evidence was as follows: Claimant, thirty-nine years of age, an honorably discharged veteran of Army service, was in previous good health. When he started work on the day of his accident he had not been accustomed to hard manual labor. There is no clear evidence that he had been previously afflicted with any disease or had any internal condition which made him susceptible to attacks of dizziness or anything else making him liable to collapse or sudden fall. Contra, the evidence is: Taking up his new task he at once engaged in heavy manual labor, viz., the handling of heavy rolls of tar paper, variously estimated at from 42 to 55 pounds each. April

29th was during an unusually and unseasonably warm spell of weather; the heat of the warehouse where he worked was estimated as from 70 to 85 degrees. His coemployee, a nineteen-year-old young man, had removed his shirt and was sweating profusely. The fan which helped to ventilate the place was not working and the heat was such as to some extent to melt the tar with which the rolls were coated — it ran over his hands and the odor of tar, to which claimant was unaccustomed and to whom it was unpleasant, permeated the atmosphere about him. Undergoing this for something over four hours claimant suddenly collapsed and fell to the floor sustaining his injuries. His fellow workman, when asked, " Q. What happened that caused him to fall? " answered, " A. *He was over-worked for one thing. He over-worked himself. Q. How do you know that? A. I mean he was tired out and puffing like he was all out of wind.*" Employer's own physician testified to the plausibility of claimant's heat prostration due to working conditions. If these conditions which were thus attached to the place of claimant's employment alone or in combination with other conditions produced his accidental injuries, then the risk of such injury was incident to his employment and in the sustaining of them it is of no legal consequence whether in falling he fell from a height or struck an obstacle in the course thereof. (*Matter of Connelly* v. *Samaritan Hospital,* 259 N. Y. 137, 144.) For, such conditions brought claimant within a " zone of special danger ", and even the concrete floor itself, in such case, being an artificiality present as a part of the employer's plant facilities, was a factor in the " catastrophic combination ".

The Industrial Board has made no finding as based upon the evidence above referred to, but affirmed the disallowance of the claim upon the grounds aforestated. In doing that it may have been guided by *Matter of Andrews* v. *L. & S. Amusement Corp.* (253 N. Y. 97). But in that case the cause of claimant's fatal fall was found upon sufficient evidence to have been an epileptic seizure, whereas in the instant case there is no evidence whatsoever of any disease or other condition, internal, peculiar and personal to claimant which caused the fall, and which was disassociated with and independent of the risks and conditions of the employment itself. Further, in the *Andrews* case the surface of the public street or way upon which the fall occurred was held not to form any zone of danger, the kind and place of employment, there, not having been one where such "street risks" were incident thereto.

The Industrial Board not having passed upon the evidence as to the causal relation of claimant's employment and his accident-producing injury, we do not consider that we have the power to direct an award even in the light of the undisputed evidence and by aid of the statutory presumption. (Workmen's Compensation Law, § 21.) The decision of the Industrial Board should be reversed as a matter of law and the matter remitted to it for further hearing and determination, with costs to appellant.

All concur.

Decision of the Industrial Board reversed as a matter of law and matter remitted to the State Industrial Board for further hearing and determination, with costs to appellant.